Ruffin, Chief Justice.'
 

 The question in this case is rather one of practice, than of principle. The case of
 
 Jones
 
 v.
 
 Hill,
 
 2 Murph. 131, decided that the sureties in an injunction bond are liable under the act of 1,800
 
 (Rev. ch.
 
 551) upon a dissolution of the injunction, decreed for the want of prosecution, caused either by the negligence or death of the plaintiff, as well as when the decree is founded on the merits. The objection here is to t he time and manner of proceeding against the surety. The act of 1810
 
 (Rev. ch.
 
 794,) provides, that when ap injunction is dissolved, the bond may be proceeded on in the same manner, and underthe same rules that bonds are proceeded on in cases of appeal; under which, it has been the constant practice in the Courts of equity to give a summary judgment, or decree for the debt and costs, or such part as the Court thought it right to decree against the plaintiff.
 

 It has been contended for the surety in this case, that by the abatement of the suit, it was out of Court; and therefore that no order could be made in the cause to dissolve the injunction, nor for judgment against the surety who is living. On the other hand, the counsel for the defendant has insisted upon the authority of the case of
 
 Jones
 
 v.
 
 Hill,
 
 before mentioned, that the abatement itself wrought a dissolution of the injunction, and that the liability of the surety on his bond survived, and
 
 might
 
 be enforced in equity in a summary way, as well as by suit at law.
 

 The Court is of opinion that the death of the plaintiff and the failure of his representative to prosecute the suit so that it abates, do not of themselves dissolve the injunction. An order of the Court is necessary to do that. It is not stated in
 
 Jones
 
 v.
 
 Hill,
 
 that such an order had been made in equity before the bond was put in suit.' But it is not stated, on the other hand, that such an order had not been made, or that it was deemed unnecessary. The
 
 *330
 
 point does not seem to have been raised. There can, however, be no doubt on it. The death of a party to a su^
 
 m
 
 equity, does not vacate nor render inoperative the orders made in the cause, while the parties were regularly before the Court. When revived, it stands upon those orders . r . m
 
 the
 
 plight in which the death of the party left it. It is true, no order upon the merits can be made after the death, and before a revivor. .It was for that reason that ’n ^ie original cáse out of which that of
 
 Jones
 
 v.
 
 Hill
 
 arose, the motion of the defendant to dissolve the injunction, uPon the reading of his answer after the plaintiff’s death, was refused.,
 
 Hill
 
 v.
 
 Jones,
 
 1 Murph. 211. But although the- Court refuses to decree upon the merits, or to take any steP whatever in that direction, while the cause is in that state, yet it would be manifestly unjust and °PPress*ve> to keep the defendant in equity, in peril of the pains of a contempt of the Court by an effort to enforce his recovery at law. That would, in effect, make the injunction perpetual; for the defendant cannot compel the executor to make himself a party; or, indeed, there may n0 rePresentative; or the defendant may have died, and the plaintiff may decline to bring in his executor, ^11 such cases, therefore, the course is for the party against whom the injunction issued, or his representative, to applv
 
 f
 
 j • • .l / f.
 
 3
 
 *or an order requiring the complainant or his representative to revive, within a limited time, or that,in case of failure, the injunction shall, for that reason, be dissolved.
 
 Hill
 
 v.
 
 Hoare, 2
 
 Cox’s Cases, 50.
 
 Hawley
 
 v.
 
 Bennett,
 
 4 Paige’s Rep. 163. The object of such a motion, is to clear the defendant, or the person represen ting him, of a contempt in proceeding at law; and the effect is that simply, without entering at all into the merits. It is right that the Court should withdraw its mandate against proceeding at law, if the person to be affected by such a proceeding will not prosecute his equitable complaint against it; and the death of one of the parties furnishes no reason why the plaintiff at law should be deprived for an unreasonable time, of his legal and only remedy, or be put in contempt for resorting to it after a reasonable time. An order of that sort, it is, therefore, competent and proper for the Court to make after an abatement by death. In
 
 *331
 
 England, it would be doubtless necessary that a copy of the order should be served. That is the common practice as to all the orders of the Court; and would be the more necessary in a case of this kind, because there is no statute or general rule of the Court, which keeps thecause in Court for any period after the death of the party. But the Court thinks the rule should be otherwise with us. As our terms are at certaiñ and short periods, parties are charged with the knowledge of all the orders made in the cause, without service.of a copy, unless specially directed; and the act of 1801
 
 (Rev. ch.
 
 574), keeps the cause in Court, for the purpose of being revived without bill, upon application of the plaintiff’s representative, for two terms. At the second term the defendant may have the injunction dissolved upon motion, if it shall not be revived during that term.
 
 If the
 
 defendant or his representative neglect . ,
 
 °
 
 to move it at that term, it may then be necessary that he should give notice of his motion, or that the order for the ® dissolution should be prospective, and served on the plaintiff or his representative, if there be one. The idea was mentioned at the bar, that although the cause was kept in Court for two terms, yet when it did abate, it was as of the death of the party; and that it was thence to be inferred, that the order at the second term against the surety, was not made in the cause ; and was, therefore,
 
 J
 
 erroneous.- The Court does not deem it material to inquire to what event or period, the abatement relates. The order that the injunction shall stand dissolved, if the suit be not revived, has been already shown to be proper and valid, although made after the abatement; for the abatement is in truth the very cause and foundation of it. But the abatement does not put any person but the deceased party out of Court, until the end of the second term. The rule has been constantly expressed in those terms, both in suits between parties, and in the
 
 regula generalis,
 
 adopted in the Courts on the act of 1786
 
 (Rev. ch.
 
 253, sec. 1); and was applied equally to cases in equity and at law. 1 Hay. 163-455. 2 Hay. 66. Tayl. Rep. 134. The surety was therefore before the Court during the second term, without further notice; and as the injunction was then dissolved for want of prosecution, the
 
 *332
 
 bond was forfeited, and the obligor became liable on it. The only inquiry that remained was, as to the proper remedy* The Court might have sent the defendant to to law; and would have done so, if for any reason, as complete justice could not have been doue in this mode, as by allowing a full defence at law; as if, for example, the defendant had asked judgment against the executor, which would raise the question of assets. But there was no reason for refusing the judgment in this case, after the surety became fixed with the debt by the dissolution of the injunction. On the contrary the defendant in equity was entitled to the speediest remedy for raising the money, after his demand had thus been judicially ascertained; and it would be equally against good morals, and the sound policy of the act of 1810
 
 (Rev. ch.
 
 794), to put it in the power of the surety, to involve him again in an expensive and tedious litigation. The interval necessary to the proofs and investigation of rights in controversy, and the ascertaining of them is that of salutary 'delay. But all beyone that is unjust; .and there can be no greater reproach to a system of jurisprudence, than that it is feeble or dilatory in enforcing rights already established by its tribunals in due course of law.
 

 
 *330
 
 The death or a party to a suit in not racate® nor render th^orderT made in the while' the parties larly before When re”' vivedit uponthose orders in inwhifh the death of leftit?lty
 

 No order upon the bemade™ after the doathofa party and before revivor.
 

 
 *331
 
 In Engtice to copy of all the orders Siuse to be served upon be° affected by them.
 

 But in this wheiuthe terms of the Court are at certain an<js]lort periods, parties are withSthe knowledge orders madeinthe withoutthe sorviee ofa c°py, unless specially directed.
 

 
 *332
 
 Something was said of the. executor of the deceased plaintiif having
 
 the
 
 whole of the second term to become a a party, which precluded the Court from making any order within that term, founded on his not having, at that moment come in. But the Court thinks there is nothing in that. The words are, “ at or beforebut if they had been “ within the second term,” the' meaning of them would be, when required by the Court, at that term. There is no doubt, however, that the Court would have received him, and rescinded the orders, had he applied at any time after they were made, unless obviously he had contumaciously' before refused. But the representative did not at any time apply, and, therefore, whether the order be considered as made at the first or the last moment of the term, it proved, in the event, to have been properly made; and it must be affirmed with costs in this Court.
 

 Per Curiam. Decree and judgment affirmed.